## GARRARD *v.* AMOSS.

Dissolving an injunction and setting aside an order appointing a receiver, thereby applying a fund in his hands to the payment of an execution in favor of defendant in error, was not error, under the facts.

November 25, 1889.

Injunction and receiver. Practice. Before Judge LUMPKIN. Hancock superior court. April term, 1889.

In an equity cause of John D. Garrard *v.* W. H. Bass, administrator of John Bonner, a consent decree was rendered on November 22, 1877, making Mrs. Ann E. Garrard a party, and ordering, among other things, that she recover certain realty known as the tan-yard property, but that, as Thomas M. Turner had advanced her $300 to pay the expenses of this litigation, Bass, administrator, execute a deed to said Turner to the property and deliver him the possession, which he should hold until the $300 was paid by Mrs. Garrard, which payment she should make within the next twelve months, with interest at ten per cent. from date, when Turner should execute title to the property to her. In 1881, Mrs. Garrard agreed with her father, Beverly Amoss, to exchange this tan-yard property for land he owned known as the Lawson place; that Turner's encumbrance should be shifted to the Lawson place so that Amoss would get a clear title to the tan-yard property; and that Pierce, Little & Co., to whom Turner was indebted, should take up the encumbrance.

Mrs. Garrard removed to the Lawson place, and on December 20, 1881, one of the firm of Pierce, Little & Co. came to her there, bringing a warranty deed bearing that date, from Turner to her, conveying the tan-yard property in expressed consideration of $433.12, and duly executed by Turner. At the same time, she executed a warranty deed to Amoss in expressed consideration of $2,500, conveying this tan-yard property; this deed being witnessed only by one Rogers (as it appears in the record), he signing as a J. P. On January 1, 1882, Amoss executed a deed to Pierce Little & Co., in expressed consideration of $2,500, conveying the Lawson place; and on March 7, 1883, three of the members of this firm made a quit-claim deed to the fourth (Pierce) to the same place in expressed consideration of $2,500. Amoss soon afterwards conveyed the tan-yard property to Clinch *et al.*, and to secure the payment of a part of the purchase money and payment for certain leather sold, took a mortgage made by Clinch *et al.* on certain other realty. This was foreclosed and a mortgage *fi. fa.* issued on February 27, 1889, and by agreement this was satisfied by the payment to the sheriff, by Clinch *et al.*, of $1,550.

On March 22, 1889, Mrs. Garrard presented her petition, in which she alleged that Culver, the member of the firm of Pierce, Little & Co. who came to her on December 20, 1881, bringing the deed from Turner to her, and accompanied by a justice of the peace, assured her that his firm would secure unincumbered title to her of the Lawson place upon her paying to them the amount paid by them to Turner; that Amoss's intention in making the deed to them to the Lawson place of January 1, 1882, was only to secure to them the sum paid by them to remove the encumbrance from the tan-yard property, which intention was well-known to them; that the real consideration of this deed was the

value of the tan-yard place in the exchange, to which they had no title; that she had no knowledge of the execution of this deed until in 1887, and never authorized it; that Pierce, Little & Co. knew that she was in possession of the land and had paid value therefor; that she has heretofore fully paid off and discharged the encumbrance they took up, and has in good faith fully performed her part of the contract of exchange and given her father a perfect indefeasible title to the tan-yard place, but he has failed to give her a clear unincumbered title to the Lawson place; that since the execution of the quit-claim deed to Pierce by the other members of his firm, he has executed a deed to others as security for a loan of $2,400 or other large sum, and this claim has been sued to judgment and a *fi. fa.* issued and levied on the land; that he is insolvent, and so are the other members of his firm and Amoss, or, if not totally so, will be unable to respond to any judgment she may recover against them by reason of the premises; that she will be remediless unless the $1,550 paid in satisfaction of the Clinch mortgage be held by the court, by receiver, to answer the final determination of this petition and all litigation that may spring out of the exchange. Waiving discovery, she prays that this money be held by the sheriff as receiver, subject to further order; that the mortgage be cancelled, and Amoss be enjoined from enforcing any right he may claim under it; that Pierce be enjoined from selling or encumbering the Lawson place; that Amoss, Pierce, Little and Culver be decreed to pay off and discharge the judgment held against it, and be required to execute to petitioner a perfect unincumbered title thereto; and that general relief be granted and process issue.

The sheriff was appointed temporary receiver, and a temporary restraining order was allowed. In the answer of Amoss (the only one in the record), he says

that he is informed that Culver, when he went to petitioner with the Turner deed and received from her the deed to the tan-yard place, informed her that Amoss would make the deed to the Lawson place to Pierce, Little & Co. to secure the payment of the encumbrance, and petitioner consented to this; that he knows that Culver undertook and promised for his firm to make and deliver to her a good and sufficient deed to the Lawson place whenever the encumbrance should be removed by payment of its amount; that respondent made the deed to Pierce, Little & Co. in pursuance of his agreement to exchange land with petitioner, for the sole purpose of securing to that firm the money paid by them to remove the encumbrance from the tan-yard place, which purpose was, at the time, clearly expressed to Culver, who then and there agreed for the firm to make to petitioner a good and valid warranty title to the Lawson place when the amount they advanced was paid to them; that the real consideration of respondent's deed to them was the amount advanced by them, and not the larger sum named in the deed; and that the entire transaction between respondent and petitioner, who is his daughter, was open, fair and without fraud, and she has no lien on any of his property, and in view of all the facts it would be harsh and inequitable to hold up the money in the hands of the receiver; and he prays that it be turned over to him, and that Mrs. Garrard be left to her remedy against Pierce, Little & Co.

A hearing was had upon the petition, answer, an affidavit by Culver, one by Sisson, and testimony of Lewis with memoranda referred to therein; the sole question before the court being as to whether the fund in the hands of the receiver should be further held up. Culver's affidavit was, that Mrs. Garrard agreed, when she .conveyed the tan-yard property to Amoss, that he should convey the Lawson place to Pierce, Little & Co.,

who had relieved the former place of the lien of $432 in favor of Turner, that is, that Amoss should have the tan-yard property freed from all liens or encumbrances and Pierce, Little & Co. should take the title to the Lawson place; and that the Lawson place was conveyed to them by Amoss, instead of by him to Mrs. Garrard and by her to them, simply to save drawing a deed, which was fully understood by all parties. Sisson deposed that he was present when Culver and Rogers were at Mrs. Garrard's house to perfect the exchange between her and Amoss, witnessed the deed by her to Amoss, and then heard a conversation between her and Culver in reference to the conveyance from Amoss to Pierce, Little & Co.; and that she knew that Amoss was to make a deed to them to the Lawson place to carry out the exchange, and consented for him to do so. Lewis testified, for plaintiff, that before the filing of a previous bill by her against Amoss *et al.,* he went with Amoss to the store of Pierce & Culver at the request of Amoss, to see if the trouble in regard to the land in controversy could not be adjusted and settled, and during the interview the memorandum shown witness was presented to and examined by Pierce, who said he had once thought the encumbrance of $430 on the tan-yard property had been paid by and was due to Pierce, Little & Co., of which firm he had once been a member, but that it seemed to have been taken out of Amoss's money in the settlement of the firm with him and to be due him (Amoss), who had charged, in the conversation, that he had been robbed by some one. The paper referred to is headed, " Memoranda Settlement with Beverly Amoss by Pierce, Little & Co." It is dated May 15, 1882; debits them to him for 1,248.96 acres of land at $5, making $6,244.80; then credits them with the assumption and payment of interest of several notes, account

v 83-49

for 1881, and "pd. for tan-yard, $2,500," making a total of $6,176.39 credited; then states, "Bal. due B. Amoss, $68.41; additional, $374.48. This bal. entered to credit on account." It is signed Pierce, Little & Co.

The court ordered that the restraining order be dissolved so far as it relates to Amoss, and that he be paid the fund in the hands of the receiver. The plaintiff excepted.

REESE & LITTLE, by J. H. LUMPKIN, for plaintiff.
C. W. DuBOSE, by brief, *contra*.

BLANDFORD, Justice.

The official report in this case shows conclusively that there was no error on the part of the court in dissolving the injunction and setting aside the order appointing a receiver, thereby turning over the fund in the sheriff's hands to be applied to the payment of the judgment and execution in favor of the defendant in error.                    *Judgment affirmed.*